(C.D. 2087)

WESTINGHOUSE ELECTRIC CORPORATION *v.* UNITED STATES

United States Customs Court, Second Division

(Decided May 25, 1959)

*Jerome G. Clifford* (*George W. Israel* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Chauncey E. Wilowski, Henry J. O'Neill*, and *Margaret M. Kiley*, trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: Certain imported paperboard channels were classified by the collector of customs at the port of entry within the provisions of paragraph 1413 of the Tariff Act of 1930 for manufactures of paper and, accordingly, were assessed with duty at the rate of 35 per centum ad valorem.

In the two protests, hereinabove enumerated, which were consolidated for the purposes of trial, plaintiff claims said merchandise is properly dutiable at the rate of 15 per centum ad valorem, pursuant to the provision in said paragraph 1413, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, which reads as follows:

Papers and paper board and pulpboard, including cardboard and leatherboard or compress leather, embossed, cut, die-cut, or stamped into designs or shapes, such as initials, monograms, lace, borders, bands, strips, or other forms, or cut or shaped for boxes or other articles, plain or printed, but not lithographed, and not specially provided for_____ 15% ad val.

An alternative claim that said merchandise is properly dutiable at the rate of 10 per centum ad valorem, within said paragraph 1413, as so modified, presumably as paperboard, subjected to one of the processes therein enumerated, has not been further pressed and is, therefore, deemed to have been abandoned.

These cases were originally submitted for decision upon an oral stipulation entered into by respective counsel at the time of trial, by the terms of which it was agreed:

* * * that the merchandise covered thereby is not Micarta, as described on the invoice, and that it is paper board, not lithographed, manufactured into shapes; that it is used in the construction of large transformers, and are designed as spacers to keep wire windings from contacting other wire windings in the transformer. They are built into the transformer as an integral part of the core[1] unit. The construction of the transformer is such that when the outer case or box is placed around the wires, channels, capacitors, etc., the case is vacuumized and sealed, * * *.

A sample of the importation was received in evidence as plaintiff's exhibit 1.

In a brief filed in behalf of plaintiff, counsel urged that since the provision for manufactures of paper was modified by the phrase, "not specially provided for," and the provision for paperboard, cut or shaped for boxes or other articles, was an *eo nomine* designation, more restricted in scope, the merchandise at bar, which meets the call of both, was more specifically provided for within the latter.

Counsel for the Government served notice to the court that upon consideration of the record as then constituted, and the brief filed in behalf of plaintiff, no brief would be submitted by the defendant.

This court, being of opinion that the oral stipulation omitted an element of proof deemed essential to the proper disposition of the case, to wit, whether the subject paperboard channels in their imported condition were finished articles or merely material for making finished articles, on its own motion, by order of July 7, 1955, set aside the submissions of these protests and restored the actions to the calendar for further proof.

When the cases were thereafter brought to trial, counsel for plaintiff introduced the testimony of the superintendent of production of its transformer division, at Sharon, Pa. This witness described plaintiff's exhibit 1 as "an inside corner channel, used as insulation between the various coil layers on a shell-type transformer." In the process of manufacture of such articles, sheets or pressboard, or paperboard, made from pulp containing a high percentage of cotton mill waste, lint, and rags, are sheared into smaller pieces, wetted with ordinary water, pressed in a steam-heated die, dried, and probably

---

[1] This word was subsequently amended to read "coil."

trimmed. The articles are then in the condition of plaintiff's exhibit 1. In that state, they are considered to be raw material, having no commercial use in this country.

After importation, the rough channels are further trimmed, and also sheared, beveled, and notched, to meet exact engineering dimensions. An inside corner channel, thus completely fabricated, from a domestically produced rough channel, is in evidence as plaintiff's exhibit 2.

It is obvious from the record as amplified that, in their imported condition, the subject channels were unfinished articles which required further processing before becoming useful for their intended purpose. Counsel for the defendant, in a brief filed after the resubmission, adverts to this circumstance as the basis for the contention that the classification of the collector was proper. It is urged that the claimed provision of paragraph 1413 contemplates only completely finished items, such as the enumerated initials, monograms, lace, borders, bands, or strips, or such forms as are, in their imported condition, ready for ultimate use for boxes or other articles. The rule of *ejusdem generis* is invoked to support counsel's suggested construction of the provision in question, as excluding raw materials, and applying only to articles "completely cut to shape."

It must be borne in mind, however, that the portion of paragraph 1413 with which we are here concerned provides for two separate classes of paper articles, namely, those which have been cut or stamped into designs or shapes, and those which have been cut or shaped for boxes or other articles. Whether or not the construction of the first part of the provision in accordance with the principle of *ejusdem generis* has the effect of excluding therefrom those forms of papers which are unfinished and, therefore, not ready for their ultimate use would seem to be of little consequence in determining the scope of the provision for papers and paperboard "cut or shaped for boxes or other articles," which is the part of the provision upon which plaintiff herein relies.

The language in which that phrase is expressed is so simple and clear of understanding as to obviate the need for any rule of construction to bring out its meaning. By every intendment, it relates to forms which, having been prepared by cutting or shaping, require further processing before becoming completely finished articles. And since the provision does not, by its terms, restrict such processing to mere manipulation of shapes which are completely finished into the articles they are destined to be, we are not warranted in placing any such limitation upon it. A form which is given the shape of a corner channel, but before being used as an insulating spacer must be machined and fitted to exact engineering specifications, is as patently one

"cut or shaped for boxes or other articles" as is one which, having been given precise dimensions, needs merely to be assembled.

In this view, we are supported by the observations of our appellate tribunal in the case of *Freund Mayer & Co., Inc.* v. *United States*, 39 C.C.P.A. (Customs) 123, C.A.D. 474, wherein it was determined that paper napkins, cut or stamped and embossed, were papers, cut to shape, within the purview of this provision, prior to its modification, *supra*. It was there stated:

> We think it may be questioned fairly whether in this case there exists any necessity for a construction of the involved phraseology of the paragraph by resorting to the rule of *ejusdem generis*. That portion of paragraph 1413 here invoked by appellant specifies six classes of *finished* articles, viz, "initials," "monograms," "lace," "borders," "bands," and "strips," but it also adds "*or other forms*," and in the same clause provision is made for "[articles] cut or shaped for boxes *or other articles.*" (Italics ours.) This latter phraseology would seem to cover material shaped to make finished articles for which *material* the duty rate is fixed at 30 per centum ad valorem. Where the finished articles are boxes they are provided for *eo nomine* at 35 per centum ad valorem, and in the case of finished articles other than boxes they probably would answer the description of manufactures of paper and require duty assessment at 35 per centum ad valorem. [Inserts and italics quoted.]

The foregoing at least suggests, if it does not expressly proclaim, that no portion of the "paper, cut to shape" provision is necessarily limited to finished articles. Assuredly, however, it leaves no room to doubt that, in the opinion of the court, the phrase "cut or shaped for boxes or other articles" refers to "material shaped to make finished articles," but not yet advanced to the stage of being finished articles.

The record in the instant case establishes without contradiction that the subject merchandise in its condition as imported consists of material formed in the shape of corner channels, but not finished or ready for its ultimate use. It is, therefore, encompassed by the provision in said paragraph 1413, as modified, *supra*, for paperboard, cut or shaped for boxes or other articles, not lithographed, for which duty at the rate of 15 per centum ad valorem is provided, and we so hold. The claim in the protests to that effect is sustained. All other claims are, however, overruled.

Judgment will be entered accordingly.